T.C. Memo. 2010-6

UNITED STATES TAX COURT

JOHNNY AND JENNIFER ROSSER, Petitioners $\underline{v}$.
COMMISSIONER OF INTERNAL REVENUE, Respondent

ROSSER ENTERPRISES, INC., Petitioner $\underline{v}$.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 6540-08, 6541-08.    Filed January 6, 2010.

Johnny Rosser, pro se.

Johnny Rosser (an officer), for petitioner in docket No. 6541-08.

Lynette Mayfield, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

DAWSON, <u>Judge</u>:  In these consolidated cases respondent determined the following Federal income tax deficiencies and accuracy-related penalties:

| Petitioners | Year | Deficiency | Accuracy-Related Penalty Sec. 6662(a) |
|---|---|---|---|
| Johnny & Jennifer Rosser | 2004 | $11,453 | $2,290 |
|  | 2005 | 2,790 | 558 |
| Rosser Enterprises, Inc. | 2005 | 4,370 | |

After concessions,[1] the issues remaining for decision are:

(1) Whether Rosser Enterprises Inc. (the corporation), is entitled to various claimed business expense deductions in excess of those respondent allowed in the notice of deficiency for 2005;

(2) whether Johnny and Jennifer Rosser (petitioners) received constructive dividend income from the corporation in 2004 and 2005;

(3) whether petitioners made cash charitable contributions for 2004 and 2005 in excess of the amounts allowed by respondent;

---

[1]Petitioners concede that their mortgage interest deduction for 2004 is limited to $3,818.  Petitioners also concede that Jennifer Rosser received unreported gross receipts of $1,138 from Mary Kay Cosmetics sales in 2004.  Respondent concedes that petitioners did not receive unreported interest income of $3,617 in 2004 from Webb Group Financial Services.

(4) whether petitioners or the corporation are entitled to deduct a claimed loss in 2005 with respect to investments placed with Webb Group Financial Services; and

(5) whether petitioners are liable for accuracy-related penalties pursuant to section 6662(a)[2] for 2004 and 2005.

FINDINGS OF FACT

Some of the facts have been stipulated and are incorporated in our findings by this reference. The record consists of the stipulation of facts with attached exhibits, additional exhibits admitted at trial, and the testimony of Johnny Rosser (petitioner) and James Clark, an unenrolled tax return preparer who prepared the Federal income tax returns for petitioners and the corporation for the years in issue.

Petitioners resided in Tennessee when they filed their petition. The corporation was organized in Tennessee and was doing business as a dry cleaning establishment in three locations in Knoxville, Tennessee, at the time its petition was filed. Petitioner is the corporation's president and sole shareholder.

Petitioners timely filed their joint Federal income tax returns on Form 1040, U.S. Individual Income Tax Return, for 2004

---

[2]Unless otherwise indicated, all section references are to the Internal Revenue Code as amended and in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

and 2005; and the corporation timely filed its Form 1120, U.S. Corporation Income Tax Return, for 2005.

On January 28, 2008, respondent issued a notice of deficiency to petitioners with respect to their taxable years 2004 and 2005. On the same date respondent issued a notice of deficiency to the corporation with respect to its taxable year 2005. No notice of deficiency was issued to the corporation with respect to its taxable year 2004 because respondent determined upon audit that there was no deficiency for that year.

Petitioners reported $7,895 on line 21 of their Form 1040 for 2004 as "personal property rental income". No personal property rental transaction appears under "Equipment Rental" on the corporation's Profit and Loss Detail for 2004, and petitioners filed no Schedule E, Supplemental Income and Loss, with their 2004 Federal income tax return.

During 2004 and 2005 the corporation paid $2,832 and $1,995, respectively, in personal insurance premiums for petitioners.

During 2004 and 2005 the corporation paid petitioners' personal medical expenses of $1,216 and $631, respectively.

The corporation paid petitioners' personal credit card expenses for 2004 and 2005, as follows:

| Credit Card | Date | Payee | Amount |
| --- | --- | --- | --- |
| Amer. Exp. | 2-25-04 | Aeronaves de Mexico | $150.00 |
| Chase | 3-24-04 | Tsuen May Trading, Miami | 115.00 |
| Amer. Exp. | 4-1-04 | Four Winds Mfg. | 3,600.00 |
| Chase | 4-28-04 | MyPaySystems.Com | 154.00 |

| Chase      | 5-13-04  | Dillards               | 38.24    |
|------------|----------|------------------------|----------|
| Chase      | 5-24-04  | Pellissippi State Cash | 295.00   |
| Chase      | 7-21-04  | MyPaySystems.Com       | 152.72   |
| Discover   | 7-30-04  | Derm. Assoc. Knoxville | 30.00    |
| Chase      | 8-23-04  | MTSU online registr.   | 1,202.50 |
| Chase      | 10-14-04 | Banana Republic        | 34.99    |
| Chase      | 10-19-04 | AMZ Superstore         | 15.96    |
| Amer. Exp. | 11-18-04 | Biltmore Est. Tickets  | 90.00    |
|            | 2004 Total |                      | 5,878.41 |

| Credit Card | Date     | Payee                    | Amount   |
|-------------|----------|--------------------------|----------|
| Chase       | 1-14-05  | Tickets Unlimited        | $136.50  |
| Chase       | 1-31-05  | HMICZ Ring & Gifts       | 4.99     |
| Chase       | 1-31-05  | Target-Knoxville         | 33.51    |
| Amer. Exp.  | 2-11-05  | Blockbuster Video        | 10.91    |
| Amer. Exp.  | 3-11-05  | Blockbuster Video        | 10.91    |
| Chase       | 3-29-05  | Etix.com                 | 27.96    |
| Chase       | 4-7-05   | MBM Limoges Jewelry      | 19.96    |
| Amer. Exp.  | 4-10-05  | Blockbuster Video        | 16.38    |
| Chase       | 4-26-05  | AMZ Amazon Paymts.       | 12.22    |
| Amer. Exp.  | 5-11-05  | Blockbuster Video        | 16.38    |
| Chase       | 5-29-05  | Paypal                   | 26.48    |
| Chase       | 6-7-05   | Target                   | 43.19    |
| Chase       | 6-28-05  | Free Watch               | 11.90    |
| Chase       | 7-1-05   | Dermatology Assoc.       | 30.00    |
| Chase       | 8-8-05   | Dermatology Assoc.       | 30.00    |
| Chase       | 8-9-05   | Mullins Family Dentistry | 163.00   |
| Chase       | 8-20-05  | USAirways                | 562.15   |
| Chase       | 8-20-05  | USAirways                | 562.15   |
| Chase       | 8-23-05  | Dermatology Assoc.       | 30.00    |
| Chase       | 8-30-05  | Atlantic Jet Sports      | 34.71    |
| Chase       | 9-7-05   | EBay S Half Com          | 137.42   |
| Chase       | 9-22-05  | Mullins Family Dentistry | 60.00    |
| Chase       | 10-26-05 | Berman Investments       | 2.95     |
| Chase       | 11-11-05 | Bargain Mart Classifieds | 18.00    |
| Chase       | 11-14-05 | Bargain Mart Classifieds | 20.00    |
| Chase       | 11-16-05 | Paypal CarlosM           | 38.27    |
| Chase       | 11-21-05 | WCB Grill Parts          | 33.82    |
| Chase       | 11-25-05 | Berman Investments       | 99.90    |
|             | 2005 Total |                        | 2,193.66 |

The corporation made two cash payments of $2,000 each to petitioner in 2004 which were not reported as wages.

The corporation made payments in the total amounts of $4,943 and $4,550 for 2004 and 2005, respectively, to Fifth Third Bank on a loan for a 2001 Ford van titled in petitioner's name but used entirely for the corporation's dry cleaning deliveries.

During 2004 and 2005 petitioners operated two automobiles, a 2001 Mitsubishi Eclipse and a 2004 Toyota Solara, primarily for their personal use. Both automobiles were owned by the corporation.

On December 31, 2003, petitioner, as president and sole shareholder of the corporation, wrote, signed, and received corporate check No. 6190 for $20,200 payable to himself, which was deposited to his personal bank account on January 6, 2004. In the notice of deficiency for 2004 respondent determined that the $20,200 was a constructive dividend includable in the total dividends petitioners received in 2004.

Petitioners claimed deductions on their Federal income tax returns for cash charitable contributions of $10,993 in 2004 and $11,381 in 2005 made to Ridgeview Baptist Church. Of those amounts, petitioners themselves actually paid $3,168 for 2004 and $3,731 for 2005. The remainder of the contributions to the church was paid by the corporation in the amounts of $7,825 in 2004 and $7,650 in 2005. The church acknowledged that it received all the contributions. Respondent determined that petitioners' charitable contribution deductions for the amounts

paid to the church were limited to $3,168 for 2004 and $3,731 for 2005.

By agreement dated September 24, 2004, the corporation acquired the assets of Old Capitol Cleaners (OCC) for a total price of $34,000, with the closing to be effective as of the end of business on September 25, 2004. The corporation made a downpayment of $10,000 at the time OCC was purchased. During November and December 2004 the corporation began making regular payments of $2,000 per month on the balance of the debt incurred for the OCC purchase.

The OCC assets acquired by the corporation in 2004 consisted, inter alia, of "the entire right, title, and interest in and to the Business, as a going concern" and thus were placed in service in 2004.

On its income tax return for 2005 the corporation claimed a depreciation deduction of $26,141. Of that amount, $20,500 was claimed as a section 179 expense with respect to the corporation's purchase of OCC in 2004, and $5,691 was claimed for ongoing depreciation of dry cleaning equipment and the corporation's 2000 Ford van. Respondent allowed the depreciation on the dry cleaning equipment but reduced the depreciation claimed on the Ford van by $238 because of the application of the accelerated cost recovery system (ACRS). Respondent also disallowed $20,500 claimed as a section 179 expense in 2005

because the corporation did not purchase OCC's assets in that year but rather in 2004, for which the expense was previously allowed.

On its "Other Deductions Statement" to its 2005 income tax return, the corporation claimed as deductions the following reimbursement amounts:  (1) Automobile reimbursements--Rosser ($3,933); (2) other reimbursements--Rosser ($8,646); and (3) additional section 263A costs--reimbursements ($6,569), for a total of $19,148.  Respondent determined in the notice of deficiency issued to the corporation for 2005 that only $10,138 of the reimbursements was substantiated and that $9,010 was unsubstantiated and therefore disallowed.

On its "Other Deductions Statement" to its income tax return, the corporation claimed insurance expenses of $6,601 paid in 2005.  Included in that amount was $1,995 the corporation paid for petitioners' personal insurance.  Respondent disallowed $1,995 and allowed the balance of $4,606.

On its "Other Deductions Statement" to its income tax return, the corporation claimed medical expenses of $631 paid in 2005.  That amount was for petitioners' personal medical expenses, and respondent disallowed it.

During 2004 petitioners and the corporation made investments with Webb Group Financial Services (Webb Group).  As early as May 2005 the Webb Group investors were notified that their

investments might be in some financial jeopardy but a class action had been filed.  On April 16, 2006, a receiver was appointed in the Superior Court of Forsyth County, North Carolina.  On May 22, 2006, the court entered an order authorizing the receiver to make some payments of attorney's fees and distributions.  On or about June 15, 2006, petitioner and the corporation filed proofs of claim with the receiver.  The corporation received a letter dated January 10, 2007, from the receiver that informed it, in part, as follows:

> The Receiver has asked the Court for permission to distribute on a pro rata basis $900,000 from the Receiver's Trust Account to the Webb/Franklin/Disciple Creditors.  The amount of distribution you are receiving on the enclosed check in the amount of $533.45 is based upon a simple "cash in less cash out" calculation for each Creditor account, and by comparing Proof of Claim forms submitted by each Creditor with the financial records the Receiver obtained for each Webb/Franklin/Disciples Creditor account that is subject to participation in the Settlement Distributions (see the distribution calculation sheet enclosed).

> For this account, records indicate that you loaned Webb/Franklin total principal amount(s) of $14,114.29, and did not receive any distributions in the form of interest paid or principal withdrawals, leaving a Net Creditor Account Balance subject to pro rata distribution in the amount of $14,114.29.

> Your Net Creditor Account Balance is equal to a pro rata distribution of 0.07563 percent of the aggregate Webb/Franklin Net Creditor Account Balances, which total $18,662,611.81.  The portion of the $900,000 being distributed from the Receiver's Trust Account that is earmarked for Webb/Franklin Creditors is $705,357, which when multiplied by your pro rata distribution percentage factor equals the amount of the enclosed check of $533.45.

On or about September 29, 2008, petitioner received a final settlement check of $13,573.99, after payments of attorney's fees and costs, and the corporation received a check for $37,185.93 as a final net payment. The payments petitioner and the corporation received partially reimbursed them for their losses through the Webb Group.

OPINION

## I. Burden of Proof

Generally, the Commissioner's determinations are presumed correct, and taxpayers bear the burden of proving that those determination are erroneous. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Deductions and credits are a matter of legislative grace, and taxpayers bear the burden of proving entitlement to any deduction or credit claimed. Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); Deputy v. du Pont, 308 U.S. 488, 493 (1940); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). Taxpayers also bear the burden of substantiating the amount and purpose of any claimed deduction. See Hradesky v. Commissioner, 65 T.C. 87 (1975), affd. per curiam 540 F.2d 821 (5th Cir. 1976).

Under section 7491(a)(1), the burden of proof may shift from taxpayers to the Commissioner if taxpayers, in addition to satisfying other requirements, produce credible evidence with respect to any factual issue relevant to ascertaining their

liabilities.  Petitioners have not alleged that section 7491(a) applies, nor did they introduce the requisite evidence to invoke that section.  Therefore, the burden of proof remains on petitioners.

Section 7491(c) provides that the Commissioner bears that burden of production with respect to a penalty or addition to tax.  To meet this burden, the Commissioner must introduce evidence indicating that it is appropriate to impose the relevant penalty or addition to tax.  Higbee v. Commissioner, 116 T.C. 438, 446 (2001).  Once the Commissioner meets this burden, the taxpayer bears the burden to produce evidence regarding reasonable cause.  Id. at 446-447.

II.  Corporate Expense Deductions Disallowed

A.  Depreciation

A reasonable allowance for the exhaustion, wear, and tear of property used in a trade or business may be deducted on a corporation's return.  Sec. 167.  A corporation may elect to expense certain depreciable business assets.  Sec. 179.  However, the election must be made on the tax return for the year in which

the property is placed in service.[3]  Sec. 179(c)(1)(B); <u>Patton v. Commissioner</u>, 116 T.C. 206, 208-209 (2001).

The corporation claimed a total depreciation deduction of $26,141 on its 2005 income tax return.  Respondent disallowed $20,783, which consisted of $20,500 claimed as a section 179 expense for the corporation's purchase in 2004 of the OCC assets as a going concern and a $238 depreciation reduction under ACRS for its 2000 Ford van.

On September 24, 2004, the corporation entered into an agreement to purchase all of the OCC assets.  There was a $10,000 downpayment made on that date.  The purchase agreement was effective at the close of business on September 25, 2004, and the corporation was required to make monthly payments on the balance of the purchase price.  The corporation began making $2,000 monthly payments to OCC during 2004.  Because the OCC assets were purchased as a going concern and thus placed in service during 2004, we hold that the corporation is not entitled to the $20,500 claimed section 179 expense deduction in 2005.[4]

---

[3]It is noted that for tax years after 2002 the statute and the regulations have been amended so that a taxpayer may make, modify, or revoke an election without the Commissioner's consent on an amended return filed after the due date of the original return.  Sec. 179(c)(2); sec. 1.179-5(c), Income Tax Regs. However, the amendments are of no use to the corporation because it had already been allowed to expense the cost of the OCC assets for the year (2004) during which they were placed in service.

[4]As previously indicated, respondent allowed the corporation
(continued...)

The corporation's Form 4562, Depreciation and Amortization, contains a $238 error in its claimed 2005 depreciation of its 2000 Ford van.  The error relates to an incorrect calculation of third-year depreciation under ACRS.  That amount is disallowed and should be reflected in the Rule 155 computations.

B.  Other Reimbursements

As reflected in our findings of fact, respondent disallowed for lack of substantiation $9,010 for other reimbursements claimed by the corporation as 2005 business expense deductions. Petitioners offered no evidence on this issue, and therefore they failed to carry their burden of proof.  We reject their contention that it was respondent's burden to substantiate the claimed deductions on the basis of "an unsigned, unattributed Form 4549 with addendums".  Clearly, the Form 4549, Income Tax Examination Changes, is a vital part of the notice of deficiency, which was signed and contained respondent's determinations, which are presumed correct.  Accordingly, we decide this issue for respondent.

C.  Insurance Expenses

The corporation paid $1,995 of petitioners' personal insurance expenses in 2005.  Petitioners offered no evidence that the claimed deduction was a deductible corporate business

---

[4](...continued)
a sec. 179 expense deduction in the full amount ($34,000) of the OCC purchase price in 2004.

expense. Respondent contends that the corporation's payment of the personal insurance expenses benefited only petitioners and not the corporation, and therefore the corporation is not entitled to the $1,995 deduction. We recognize that payments by an employer to defray personal expenses of an employee, including payments for life, accident, and health insurance covering an employee, though of benefit primarily to the employee, may be deducted by the employer under section 162(a) in appropriate circumstances. For example, such payments may be deducted with the requisite intent to compensate for services actually rendered and in an amount that is reasonable when added to the rest of the employee's compensation package. Cf. Paula Constr. Co. v. Commissioner, 58 T.C. 1055, 1058 (1972), affd. per curiam 474 F.2d 1345 (5th Cir. 1973); Francis v. Commissioner, T.C. Memo. 2007-33. If the payment, in the case of a reimbursement of an employee's medical expenses, is to be excludable from the employee's income under section 105(b) as well as deductible to the employer under section 162(a), it generally must be paid in accordance with a "benefit plan" to a payee who receives it in the capacity of an employee rather than in the capacity of a shareholder. Cf. Estate of Leidy v. Commissioner, T.C. Memo. 1975-340, affd. without published opinion 549 F.2d 798 (4th Cir. 1976). There is no evidence in this record showing the corporation had an insurance plan of any type covering its

employees, although its income tax return for 2005 claimed a deduction for salaries and wages of $156,313 paid to employees and compensation of $13,000 paid to petitioner as its only shareholder. Accordingly, we hold petitioners failed to prove that the corporation is entitled to deduct the claimed insurance expenses paid on their behalf for 2005. The payment was a constructive dividend to them. See Benson v. Commissioner, T.C. Memo. 2004-272.

D. Medical Expenses

The corporation claimed a deduction for medical expenses of $631 on its 2005 income tax return. Respondent disallowed it. Petitioners admitted that the corporation paid their personal medical expenses. The corporation's payment of such expenses benefited petitioners and not the corporation. Therefore, we hold that the corporation is not entitled to the deduction. In addition, the payment constituted a constructive dividend to petitioners.

III. Constructive Dividends

Respondent asserts that constructive dividend income should be imputed to petitioners for amounts paid by the corporation to them or on their behalf. Petitioners dispute that they received the constructive dividends determined by respondent. We agree with respondent that petitioners received numerous constructive dividends but not all of those determined.

A constructive dividend arises when a corporation confers an economic benefit upon a shareholder without expectation of repayment and the corporation on the date of the deemed distribution had current or accumulated earnings and profits. Crosby v. United States, 496 F.2d 1384, 1388 (5th Cir. 1974); Truesdell v. Commissioner, 89 T.C. 1280, 1295 (1987). Constructive dividends are includable in a taxpayer's gross income under section 61(a)(7). Gross income includes income realized in any form, whether in money, property, or services. Sec. 1.61-1(a), Income Tax Regs.

A greater potential for constructive dividends exists in closely held corporations where dealings between stockholders and the corporation are characterized by informality. Benson v. Commissioner, supra; Zhadanov v. Commissioner, T.C. Memo. 2002-104. Where, as here, the sole shareholder uses corporate property for a personal benefit which is not proximately related to corporate business, the shareholder must include the value of the benefit as a constructive dividend to the extent of the corporation's earnings and profits.[5] Furthermore, to be a constructive dividend to the shareholder, a payment of money or property does not need to be made by the corporation directly to the shareholder. Benson v. Commissioner, supra. It is also well

_____

[5]The corporation had accumulated earnings and profits of at least $142,973 in 2004 and 2005.

settled that nondeductible payments made by a corporation to a third party on behalf of or for the economic benefit of its shareholders may constitute dividends taxable to those shareholders under section 301. <u>Proctor v. Commissioner</u>, T.C. Memo. 1981-436.

The testimony and documentary evidence in this record establish that petitioners did not separate their personal transactions and expenses from those of the corporation. They paid personal expenses with corporate checks. They paid personal credit card expenses with corporate funds. They used corporate property for their personal use. Consequently, they received constructive dividends in the amounts of corporate funds spent for them and in the amounts of the lease value of corporate property used by them. Clearly, petitioners received economic benefits for items not deductible by the corporation, and those constructive dividends constitute gross income to them for 2004 and 2005.

We hold that the following expense items paid or provided by the corporation constitute petitioners' constructive dividends for the years in issue:

(1) <u>Personal Insurance Premium Payments</u>

The corporation paid petitioners' personal insurance premiums of $2,832 in 2004 and $1,995 in 2005. Petitioners

presented no evidence showing the insurance payments gave rise to a deductible corporate business expense.

(2) Personal Medical Expense Payments

The corporation paid petitioners' personal medical expenses of $1,216 in 2004 and $631 in 2005. These payments benefited petitioners, and no evidence was presented showing they were a deductible corporate business expense. See Estate of Leidy v. Commissioner, supra.

(3) Personal Credit Card Charges

The corporation made payments of petitioners' American Express and Chase credit card charges of $5,878.41 in 2004 and $2,193.66 in 2005. A corporation's payment of a shareholder's personal credit card charges may give rise to a constructive dividend to the shareholder. Beck v. Commissioner, T.C. Memo. 2001-270. Petitioner admitted at trial that the personal credit card charges were paid with corporate funds. Petitioners benefited from the payments, and they were not deductible corporate business expenses.

(4) Two Corporate Checks Payable to Petitioner

At trial, petitioner admitted that two payments of $2,000 each were made to him by corporate checks Nos. 6330 and 6690 in 2004. He contends that these were rental payments for equipment he personally owned before the corporation was organized. However, there is no evidence in the record of any written rental

agreement for the equipment.  In fact, the check amounts do not agree with the rental income reported on line 21 of petitioners' Federal income tax return for 2004.  Moreover, there is no Schedule E reporting rental income on their income tax return for 2004 or 2005, and the alleged rental was not shown on the corporation's Profit and Loss Detail for 2004.  In view of these facts, we conclude that petitioner received a total cash benefit of $4,000 in 2004 for which there was no corporate purpose, thus resulting in a constructive dividend to petitioner.

(5)  Personal Use of Corporate Automobiles

The parties stipulated and petitioner admitted at trial that petitioners used two vehicles, a 2004 Toyota Solara and a 2001 Mitsubishi Eclipse, owned by the corporation, for their personal use during the years at issue.  A taxpayer realizes constructive dividends in connection with personal use of a corporate automobile in the amount of the fair rental value of the automobile.  Sec. 301(b)(1); Proctor v. Commissioner, supra. Respondent determined that during the years at issue the annual fair market lease value of the Toyota was $7,250 per year and the annual fair market lease value of the Mitsubishi was $6,350 per year.  Petitioner offered no evidence of corporate use of the automobiles and did not contest the reasonableness of the annual lease values.  In fact, both automobiles were used primarily by petitioners.  Accordingly, we conclude that petitioners received

constructive dividends from the corporation of $7,250 and $6,350 in the years 2004 and 2005, respectively.

Contrary to respondent's determination and the contentions and arguments made in his briefs, we hold that the following two items are not taxable as constructive dividends to petitioners.

(1)  <u>Corporate Payments on Loan for Van Purchased in Petitioner's Name</u>

The corporation made total payments to Fifth Third Bank of $4,943 in 2004 and $4,550 in 2005 on a loan on a 2001 Ford van purchased and titled in petitioner's name but used exclusively by the corporation as a dry cleaning delivery vehicle.  The van did not benefit petitioner personally.  It was used only for business purposes.  We conclude that for financing reasons petitioner purchased the vehicle in his name, and he held title to it as a nominee for the corporation.  Therefore, we hold that the payments are not includable in petitioners' income in 2004 and 2005.

(2)  <u>Corporate Check No. 6190</u>

As stated in our findings of fact, petitioner wrote, signed, and delivered to himself corporate check No. 6190 dated December 31, 2003, for $20,200.  It was deposited in his personal bank account on January 6, 2004.  Respondent determined in his notice of deficiency that the $20,200 was a constructive dividend petitioner received in 2004.  Respondent strongly suggests in his brief that petitioner may have backdated the corporation's check

and that it was possibly written on or after January 2, 2004.
Petitioner denies it. We are not persuaded by respondent's
analysis. For many years this Court has favored and followed the
cash-equivalent-upon-receipt rule enunciated in Kahler v.
Commissioner, 18 T.C. 31, 33-35 (1952), holding that a cash basis
taxpayer realized income in 1946 from a check dated and received
on December 31, 1946, but not cashed by him until January 2,
1947. In that and similar situations, the date of payment has
been related back to the date of receipt. See Bright v. United
States, 926 F.2d 383, 385-387 (5th Cir. 1991); Estate of Kamm v.
Commissioner, 349 F.2d 953, 955 (3d Cir. 1965), affg. T.C. Memo.
1963-344; Stephens v. Commissioner, T.C. Memo. 1956-284. We find
and conclude that petitioner received the $20,200 as income in
2003, a year not before us and over which we lack jurisdiction.
Accordingly, we hold that petitioner did not receive constructive
dividend income in that amount in 2004.

IV. Charitable Contributions

Petitioners and the corporation made charitable
contributions to Ridgeview Baptist Church of $10,993 in 2004 and
$11,381 in 2005. Petitioners paid $3,168 in 2004 and $3,731 in
2005 and the corporation paid the remaining amounts of $7,825 and
$7,650, respectively, for those years. As set forth in
respondent's notice of deficiency issued to petitioners, they
were allowed the amounts they actually paid to the church in

those years and were disallowed the amounts the corporation paid. In the notice of deficiency issued to the corporation for 2005, respondent allowed the $7,650 the corporation paid the church in that year, which was apparently reduced to $3,237 because of "the taxable income limitations to which corporations are subject". Sec. 170(b)(2). Petitioner offered nothing at trial that contradicts the evidence of record. Accordingly, we hold that petitioners are entitled only to deductions for charitable contributions paid to the church of $3,168 in 2004 and $3,731 in 2005.[6]

V. Claimed Loss on Investments With Webb Group

Petitioners and the corporation allege in their respective petitions that a loss was incurred in 2005 with respect to investments they placed through the Webb Group.

Section 165 provides that there shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise. See also sec. 1.165-1(a), Income Tax Regs. A loss is not sustained during the taxable year if there is a reasonable prospect of recovery. Sec. 1.165-1(d)(2), Income Tax Regs. Filing a lawsuit may indicate a

---

[6]Petitioner has not asserted that the corporation was not allowed a charitable contribution deduction of $7,825 made to the church in 2004. Furthermore, we note that the corporation's Profit and Loss Detail for 2004 shows that a charitable contribution of that amount was paid and claimed in that year and apparently not disallowed by respondent.

reasonable prospect for reimbursement.  Bacon v. Commissioner,
T.C. Memo. 1989-90.  To be allowable, a loss must be evidenced by
closed and completed transactions that are fixed by identifiable
events.  Sec. 1.165-1(d)(1), Income Tax Regs.

As reflected in our factual findings, no loss could be
determined in 2004 or 2005.  The stipulated documents show that
the Webb Group investors were informed that a class action would
be filed and that a substantial recovery was anticipated.  On May
23, 2006, petitioner and the corporation were informed that a
written settlement agreement had been approved that would return
a significant portion of the investors' principal investment.  On
January 10 and May 29, 2007, petitioners and the corporation
received partial payments on their investments made through Webb
Group Financial Services.  Finally the litigation ended, and on
September 29, 2008, petitioner received a final settlement check
for $13,573.99 and the corporation received a final settlement
check for $37,185.93.

The stipulated documents and petitioner's testimony show
that there was no fixed and identifiable event that established a
deductible loss for petitioners or the corporation during the
years at issue and that there was during those years a
significant prospect of recovery of the Webb Group loss through
both litigation and the settlement agreement, which were
concluded after the years at issue.  Accordingly, we hold that

neither petitioners nor the corporation are entitled to a deduction in 2005 for a loss regarding their investments with the Webb Group.

VI.  Accuracy-Related Penalties

Respondent determined that petitioners are liable for accuracy-related penalties under section 6662(a) for 2004 and 2005.  Respondent argues that petitioners are liable for the section 6662(a) accuracy-related penalties attributable to negligence or disregard of rules or regulations or to substantial understatements of income tax.

As previously stated, section 7491(c) provides that the Commissioner bears the burden of production with respect to the liability of any individual for penalties.  Respondent has satisfied his burden of production by producing evidence establishing that petitioners were negligent in disregarding substantiation requirements for some of their claimed deductions, for omitting some taxable income, for using corporate funds for their own personal expenses, for commingling their own and corporate funds, and for using corporate property for personal use without properly accounting for the benefits they received.

Section 6662(a) imposes a penalty in an amount equal to 20 percent of the portion of the underpayment of tax attributable to one or more of the items set forth in section 6662(b), including negligence or disregard of rules or regulations and substantial

understatement of income tax. "Negligence" includes any failure to make a reasonable attempt to comply with the provisions of the internal revenue laws and is the failure to exercise due care or the failure to do what a reasonable and prudent person would do under the circumstances. Sec. 6662(c); Neely v. Commissioner, 85 T.C. 934, 947 (1985); sec. 1.6662-3(b)(1), Income Tax Regs. "Disregard" includes any careless, reckless, or intentional disregard of rules or regulations. Sec. 6662(c); sec. 1.6662-3(b)(2), Income Tax Regs. An "understatement" of income tax is the difference between the amount of tax required to be shown on the return and the amount of tax actually shown on the return. Sec. 6662(d)(2)(A). A "substantial understatement" exists if the understatement exceeds the greater of 10 percent of the tax required to be shown on the return for a taxable year or $5,000. Sec. 6662(d)(1)(A).

The section 6662(a) accuracy-related penalty does not apply with respect to any portion of an underpayment if the taxpayer proves that there was reasonable cause for such portion and that he acted in good faith with respect thereto. Sec. 6664(c)(1). The determination of whether the taxpayer acted with reasonable cause and in good faith depends on the pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs. The most important factor is the extent of the taxpayer's effort to assess his proper tax liability. Id.

Petitioners conceded some items in the notice of deficiency, such as a failure to report gross receipts and an incorrect mortgage interest deduction. Petitioner presented at trial no evidence that he used due care in claiming deductions that were subsequently adjusted in the notice of deficiency or in failing to report items as constructive dividends. He also failed to keep corporate expenses and funds separate from his own or to keep adequate tax records to assist in the proper preparation of petitioners' income tax returns for 2004 and 2005. Petitioners failed to prove that they had reasonable cause for what they did or that they acted in good faith.

In their briefs petitioners contend that the accuracy-related penalties should not be imposed because they provided sufficient information to and relied on their tax return preparer, Mr. Clark, to prepare correct income tax returns for them and the corporation. We disagree.

Petitioner had a responsibility to keep adequate records and to substantiate items properly. Sec. 1.6662-3(b)(1), Income Tax Regs. The negligence penalty has been imposed for failure to keep accurate records as required. Benson v. Commissioner, T.C. Memo. 2004-272. Petitioner admitted at trial that he lacked certain records necessary to substantiate his positions, and he was unable to produce records supporting his positions. Thus

petitioners were negligent in failing to keep accurate records and to substantiate items as required.

Section 6664(c) provides an exception to the accuracy-related penalty where there is reasonable cause for the underpayment and the taxpayer acted in good faith with respect to the portion of the underpayment for which there was reasonable cause. Petitioners have failed to show reasonable cause for the underpayments on their returns, nor have they shown that they acted in good faith with respect to any portion of the underpayments. They simply seek relief from the penalties by casting all responsibility on their tax return preparer. However, the ultimate responsibility for a correct return lies with the taxpayer, who must furnish the necessary information to his agent who prepared his return. Benson v. Commissioner, supra. The taxpayer has the burden of establishing that he at least provided the correct information to his tax return preparer and that the incorrect returns were the result of the preparer's mistakes. Id. The taxpayer also bears in some circumstances the consequences of any negligent errors committed by his agent.

Generally, the duty of filing accurate returns cannot be avoided by placing the responsibility on a return preparer. Loftus v. Commissioner, T.C. Memo. 1992-266. In limited situations, however, reasonable cause for negligence due to return preparer mistakes may be established if the taxpayer

shows: (1) That he provided the return preparer with complete and accurate information from which the tax return could be properly prepared; (2) that an incorrect return was the result of the return preparer's mistakes; and (3) that the taxpayer in good faith relied on the advice of a competent return preparer. Id. Even if a taxpayer established the above elements of a preparer error, the taxpayer still has a duty to read and review the return and make sure that all income items are included. Id. Petitioners have not established the elements for relief from penalties on account of the return preparer's errors.[7]

On the basis of this record, we hold that petitioners are liable pursuant to section 6662(a) for the accuracy-related penalties with respect to the resulting income tax deficiencies for 2004 and 2005.

In reaching our holdings herein, we have considered all arguments made by the parties, and, to the extent not mentioned, we conclude they are moot, irrelevant, or without merit.

To reflect the foregoing,

Decisions will be entered

under Rule 155.

---

[7]We note that in some respects petitioners may have been misguided by their return preparer's advice because he is not an attorney, a certified public accountant, an accountant, an enrolled agent, or a tax professional. See Martin v. Commissioner, T.C. Memo. 2009-234.