T.C. Memo. 2011-93

UNITED STATES TAX COURT

ANTHONY D. OGLESBY, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 30298-08.                    Filed April 28, 2011.

Anthony D. Oglesby, pro se.

<u>Michael T. Shelton</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

MORRISON, <u>Judge</u>:  In a notice dated September 12, 2008,
respondent (the IRS) determined a deficiency of $5,612 in the
federal income tax of petitioner, Anthony D. Oglesby, for tax
year 2005.  The IRS also determined that Oglesby was liable for a
$100 addition to tax and a $1,122.40 penalty.  At issue is
whether Oglesby is entitled to certain deductions, whether he had

unreported income, and whether he is liable for an addition to tax under section 6651(a)(1) and a penalty under section 6662.[1]

                        FINDINGS OF FACT

The parties stipulated some facts; those facts are so found.

In 2005 Oglesby was an "operating engineer", which is a type of heavy-equipment operator. He was a member of the International Union of Operating Engineers, which served as a sort of employment agency. Companies that needed operating engineers would contact the union, which would dispatch members, such as Oglesby, to the companies. When union members completed their jobs, the process repeated. In 2005 Oglesby operated equipment for three different companies and paid union dues of $2,869.77.

The union required its members to provide their own transportation. Oglesby owned an Isuzu Rodeo, which he used for that purpose. The Rodeo was the only vehicle he owned, and it also served as a personal vehicle.

Besides being an operating engineer, Oglesby was a landlord. He owned a two-unit rental property in Chicago, which he sold in February 2005. As a condition of closing the sale, the buyer required him to make certain repairs. Oglesby paid a contractor

---

[1]All section references are to the Internal Revenue Code, as amended, effective during the year at issue. Rule references are to the Tax Court Rules of Practice and Procedure unless otherwise indicated.

to make those repairs, which consisted of replacing tile, tubs, sinks, faucets, showers, toilets, baseboards, cabinets, countertops, and kitchen flooring.

Two other amounts in 2005 are relevant here. First, Oglesby received $3,620 of unemployment compensation for parts of 2005. Second, he settled a debt to General Motors Acceptance Corporation for $1,659 less than he owed.

On June 27, 2007, Oglesby filed his 2005 tax return on Form 1040, U.S. Individual Income Tax Return. He claimed a $4,150 deduction for repairs to the rental property and claimed $23,809 in various deductions on Schedule A, Itemized Deductions. He reported no income from cancellation of debt, reported no income from unemployment compensation, and reported a $9,876 loss from selling the rental property. He reported a total tax of $8,954.

The IRS mailed Oglesby a notice of deficiency dated September 12, 2008. The IRS determined that he was not entitled to a deduction for the repair expenses and that he was not entitled to $11,928 of the Schedule A deductions. The IRS determined that he must include the unemployment compensation and the gain from the partial cancellation of his debt to General Motors Acceptance Corporation in gross income. Finally, the IRS determined that he was liable for an addition to tax of $100 under section 6651(a)(1) and a penalty of $1,122.40 under section 6662. Oglesby disputes those determinations.

OPINION

I.   Evidentiary Issues

   A.   Exhibits 5-P and 6-P Are Admissible Under the Business
        Records Exception.

   The IRS objects to Exhibits 5-P and 6-P, which purport to be
invoices issued by Al Williams Maintenance & Home Improvement (Al
Williams Maintenance) for the repairs to the rental property.
The exhibits purport to show that Al Williams Maintenance billed
Oglesby for the services and that Oglesby paid the bills.  The
IRS raises two objections.

   First, the IRS objects that Oglesby did not authenticate the
documents.  A document is authentic if it is what its proponent
claims it to be.  The document's proponent must produce evidence
sufficient to support a finding that the document is authentic.
Fed. R. Evid. 901(a).  For example, a witness with knowledge can
testify that the document is what its proponent claims it to be.
Fed. R. Evid. 901(b)(1).  Oglesby, a witness with knowledge, gave
credible testimony that Exhibits 5-P and 6-P are the receipts he
received from Al Williams Maintenance.  He further testified that
the receipts correctly reflected the services he received and the
amounts and dates of payment.[2]  Oglesby has more than satisfied
the test for admitting the documents.  See United States v.

---

   [2]Oglesby also testified regarding some inconsistencies on
the receipts regarding payment.  See infra part II.A.1.
(discussing inconsistencies).

<u>Safavian</u>, 435 F. Supp. 2d 36, 38 (D.D.C. 2006) ("The Court need not find that the evidence is necessarily what the proponent claims, but only that there is sufficient evidence that [a] <u>jury</u> ultimately might do so."). The authentication objection will be overruled.

Second, the IRS objects that the documents are hearsay. Its objection is that the documents are not business records because Oglesby has not shown by the testimony of an employee of Al Williams Maintenance that the documents are business records of that company.

Generally, hearsay is a statement that was not made by the declarant while testifying at trial and that is offered into evidence to prove the truth of the matter asserted. Fed. R. Evid. 801(c). The term "statement" includes written assertions. Fed. R. Evid. 801(a)(1). Hearsay is not admissible unless an exception to the hearsay rule permits the statement to be admitted. See Fed. R. Evid. 802, 803, 804, 807.

The receipts marked as Exhibits 5-P and 6-P are hearsay. Oglesby offered them into evidence to prove the truth of the matters asserted--that Al Williams Maintenance performed the services and that Oglesby paid for those services. They are thus inadmissible unless one of the exceptions to the hearsay rule applies. Fed. R. Evid. 802.

One exception to the hearsay rule is the so-called business records exception. A document is a business record if it is a record "in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge". Fed. R. Evid. 803(6). To be admissible, the business record must be "kept in the course of a regularly conducted business activity", and it must be "the regular practice of that business activity" to make the record. Id.

It is true that Oglesby did not show that the receipts were the business records of Al Williams Maintenance. That is, he did not show that Al Williams Maintenance made the receipts near the time of the events they described, that the receipts were kept in the course of business by Al Williams Maintenance, and that the receipts were the type of documents regularly made by Al Williams Maintenance. This, however, is irrelevant. Oglesby showed by his own testimony that the receipts satisfied these requirements as his own business records. The receipts were incorporated into the records of his rental business and relied upon in the operation of that business. See United States v. Jakobetz, 955 F.2d 786, 800 (2d Cir. 1992) (holding that a toll receipt incorporated into a company's records qualified as a business record, even though the receipt's custodian had no knowledge of its preparation, because the receipt had been embedded in the

company's business records). It was therefore unnecessary for Oglesby to call a witness from Al Williams Maintenance to build the foundation for the receipts. See <u>United States v. Adefehinti</u>, 510 F.3d 319, 325 (D.C. Cir. 2007); <u>Thanongsinh v. Bd. of Educ.</u>, 462 F.3d 762, 777 (7th Cir. 2006); <u>United States v. Williams</u>, 205 F.3d 23, 34-35 (2d Cir. 2000). Thus the IRS's objection that Oglesby failed to have a witness from Al Williams maintenance testify about the receipts will be overruled.

B. <u>We Will Not Consider Documents Attached to Oglesby's Brief Because They Are Not in Evidence</u>.

Oglesby attached a large number of documents to his brief that he did not offer into evidence.[3] Documents attached to a party's brief are not evidence. Rule 143(c). And we will not consider them. See <u>Godwin v. Commissioner</u>, T.C. Memo. 2003-289, affd. 132 Fed. Appx. 785 (11th Cir. 2005).

## II. <u>Deficiency in Tax</u>

The following issues are in dispute: (i) whether Oglesby is entitled to a $4,150 deduction for repair expenses (we find that he is not and that the $4,150 should instead be added to his basis in the rental property), (ii) whether Oglesby is entitled to $11,928 of disputed Schedule A deductions (we find that he is entitled to a deduction of $2,869.77 and that the IRS properly

---

[3]At trial the Court instructed Oglesby that we could not consider documents not in the record unless we granted a motion to reopen the record. Oglesby made no such motion and gave no reasons for granting such a motion.

disallowed the remaining $9,058.23), (iii) whether Oglesby must include $1,659 from the cancellation of debt in gross income (we find that he must), and (iv) whether Oglesby must include $3,620 of unemployment compensation in gross income (we find that he must).

A.   Deductions

Generally, a taxpayer must prove that the determinations in the notice of deficiency are wrong.  Rule 142(a)(1); Welch v. Helvering, 290 U.S. 111, 115 (1933).

1.   Schedule E Expenses--The IRS Properly Disallowed Oglesby's Claimed Repair Expense Deductions.

The IRS determined that Oglesby was not entitled to a deduction of $4,150 for repair expenses.  As we explain below, we uphold the IRS's determination that he is not entitled to a deduction under section 162 for the $4,150 but hold that the $4,150 is properly included in his basis in the rental property. Thus Oglesby's loss from the sale of the rental property--which he reported as $9,876--should be increased to $14,026.

A taxpayer must maintain records sufficient to enable the IRS to determine the taxpayer's correct tax liability.  Sec. 6001; sec. 1.6001-1(a), Income Tax Regs.  To substantiate the deductions, Oglesby offered his own testimony and Exhibits 3-P, 4-P, 5-P, and 6-P.  Exhibits 5-P and 6-P, which are invoices that show the billing and payment for the repairs, have unexplained inconsistencies.  For example, Exhibit 5-P is dated before

Exhibit 6-P, yet the invoice number on Exhibit 5-P (05-OGL918) is higher than the invoice number on Exhibit 6-P (05-OGL205). The documents have two inconsistencies regarding payment. First, both invoices show the payment method as "Check", but Oglesby testified that he paid cash. Second, Exhibit 6-P has a small inconsistency in what it shows as the amount Oglesby paid. Exhibit 6-P is an invoice dated February 17, 2005. It shows the billing and payment history for some of the repairs to the rental property. It lists the following events and amounts:

- "[b]illing for services rendered" for $6,197.32;
- "[l]ess down payment on 07-Jan.-05" of $3,500;
- "[p]ayment received on 10-Feb.-05" of $1,500; and
- "[p]ayment received on 17-Feb.-05" of $1,197.32.

Below these items, it lists a "total" of "$0.00". A total of zero is consistent with the parts of the invoices just described, which show that Oglesby was billed for $6,197.32 and that he made payments totaling $6,197.32 (i.e., $6,197.32 – $3,500 – $1,500 – $1,197.32 = 0). But in a box marked "Amount paid", the invoice states that the amount paid is only $2,697.32 as of February 17, 2005, which is the date of the invoice. The $2,697.32 it lists as the "Amount paid" is the sum of the February 10 and 17 payments without including the January 7 downpayment. Oglesby did not explain the inconsistencies other than to say that they were errors, but he testified that he indeed paid all four

amounts (i.e., a total of $6,197.32) and that he paid those amounts in cash.

We find Oglesby's testimony to be credible.  Although the documents have inconsistencies as to the method and amounts of payment, the inconsistencies are small:  both could be simple entry errors.  Oglesby's credible testimony combined with the documents is sufficient to show that he did indeed pay $6,197.32 for the repairs described by Exhibit 6-P and $1,490 for the repairs described by Exhibit 5-P.[4]  But, as we explain below, he is not entitled to a deduction under section 162 because the expenditures are capital expenditures.

Section 162(a) allows a deduction for the ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business.  Incidental repairs to property can be deductible under section 162(a) if the repairs (i) keep the property in an ordinarily efficient operating condition and (ii) do not appreciably prolong its life or materially add to its value.  Sec. 1.162-4, Income Tax Regs.  Expenditures for repairs that appreciably prolong the property's life or materially add to its value are capital expenditures and are not immediately deductible.  See sec. 263(a)(1); sec. 1.263(a)-1(b), Income Tax

_____

[4]On his return Oglesby did not claim a deduction for the full amount that he paid--he claimed a deduction of only $4,150. In court Oglesby did not assert that he is entitled to a deduction for more.  We address only the tax consequences of the $4,150 for which he claimed a deduction.

Regs. Generally, a taxpayer must add a capital expenditure to basis. Sec. 1.263(a)-1(b), Income Tax Regs. And a taxpayer's cost recovery of capital expenditures, if allowable, will generally come over time through deductions for amortization or depreciation. See, e.g., secs. 167, 168, and 169. Otherwise a taxpayer recovers the cost of capital expenditures through increased basis when disposing of the property. See sec. 1001 (defining gain on the sale of property as the excess of the amount realized over the adjusted basis); sec. 1011 (giving general rule that the adjusted basis is basis under section 1012 as adjusted by section 1016); sec. 1012 (defining basis as the cost of property); sec. 1016(a)(1) (increasing basis by expenditures properly chargeable to capital).

The invoices that Oglesby provided describe the repairs as the replacement of tile, tubs, sinks, faucets, showers, toilets, baseboards, cabinets, countertops, and kitchen flooring. The regulations under section 162(a) state that repairs "in the nature of replacements, to the extent that they arrest deterioration and appreciably prolong the life of the property, shall * * * be capitalized and depreciated in accordance with section 167". Sec. 1.162-4, Income Tax Regs. We believe that the repairs at issue, which involved the replacement--not repair--of a large number of items, not only appreciably prolonged the life of the property, but materially added to its

value.  See, e.g., <u>Jacobson v. Commissioner</u>, T.C. Memo. 1983-719 (allowing deduction for the cost of various repairs to rental property but requiring capitalization of the cost of installing new cabinet doors and countertops in the kitchen of one unit). Oglesby--who has the burden of proof--has not given evidence that the expenditures were for "incidental repairs" rather than substantial renovations.  See, e.g., <u>Bennett v. Commissioner</u>, T.C. Memo. 2010-114.  And we therefore find that the costs were capital expenditures, not immediately deductible expenses.

We uphold the IRS's determination that Oglesby is not entitled to a deduction under section 162 but find that the $4,150 is properly included in his basis in the rental property. See sec. 1016(a)(1).  Because Oglesby sold the rental property for a tax loss during 2005, we hold that his loss should be increased by $4,150, the amount for which he claimed a deduction.

### 2. Schedule A Itemized Deductions

The IRS determined that Oglesby was not entitled to various itemized deductions totaling $11,928.  As we explain below, Oglesby is entitled to a deduction of $2,869.77 for union dues paid, and we uphold the IRS's determination disallowing the remaining $9,058.23 of Schedule A deductions.

#### a. Oglesby Is Entitled to a Deduction of $2,869.77 for Union Dues.

The parties stipulated that Oglesby substantiated a deduction of $2,869.77 for union dues.  Dues and other payments

to labor unions are deductible if they otherwise satisfy the regulations under section 162.  Sec. 1.162-15(c), Income Tax Regs.  We therefore find that Oglesby was entitled to a deduction of $2,869.77.

### b.    The IRS Properly Disallowed the Other Schedule A Deductions.

The IRS disallowed Oglesby's deductions for vehicle mileage. No deduction is allowed under section 162 for travel expenses unless the taxpayer satisfies the substantiation requirements of section 274(d).  Sec. 274(d)(1); sec. 1.274-5T(b)(1), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985).  To do so, the taxpayer must substantiate the amount of the expense and the time, place, and business purpose of the travel.  Sec. 274(d).[5] The substantiation must take the form of either (i) adequate records or (ii) other sufficient evidence corroborating the taxpayer's own statement.  Id.

Oglesby used his Isuzu Rodeo for travel to and from job locations.  But he did not keep a contemporaneous mileage log. And he did not offer any other evidence to establish the number of miles traveled or the date, place, and business purposes of

---

[5]Sec. 274(d) does not apply to qualified nonpersonal use vehicles.  A qualified nonpersonal use vehicle is a vehicle, which "by reason of its nature, is not likely to be used more than a de minimis amount for personal purposes."  Sec. 274(i); see also sec. 1.274-5T(k)(2)(ii), Temporary Income Tax Regs., 50 Fed. Reg. 46033 (Nov. 6, 1985) (listing examples).  Oglesby's vehicle--an SUV--is not a qualified nonpersonal use vehicle.

the travel.  Because he offered no evidence to satisfy section 274(d), we uphold the IRS's determination that he is not entitled to the mileage deduction.

Oglesby offered no testimony or evidence about any other deductions.

We find that Oglesby is entitled to a deduction of $2,869.77 for union dues paid, and we uphold the IRS's determination disallowing the remaining $9,058.23 of Schedule A deductions.

B.    Unreported Income--The IRS Properly Determined That Oglesby Failed To Report $5,279 of Income.

1.    Oglesby Failed To Report $1,659 of Cancellation of Debt Income.

Gross income includes all income from whatever source derived.  Sec. 61(a).  Gross income generally includes discharge of debt.[6]  Sec. 61(a)(12).  A discharge of debt for these purposes includes situations where a taxpayer satisfies an obligation for less than its face value.  See Warbus v. Commissioner, 110 T.C. 279, 284 (1998); see also sec. 1.61-12(a), Income Tax Regs.

Oglesby testified that, in 2005, he settled a debt to General Motors Acceptance Corporation by paying $1,659 less than

---

[6]Sec. 108(a) excludes certain discharges of debt from gross income.  For example, sec. 108(a)(1)(A) excludes discharges in a title 11 case and sec. 108(a)(1)(B) excludes discharges occurring when the taxpayer is insolvent.  Oglesby has not alleged--and the record does not show--that sec. 108(a) excludes his discharge of debt from gross income.

he owed.  He did not report the $1,659 on his return.  We therefore uphold the IRS's determination that Oglesby failed to report $1,659 of gross income from the cancellation of debt.

### 2. Oglesby Failed To Report $3,620 of Income From Unemployment Compensation.

In 2005 Oglesby received $3,620 in unemployment compensation, which he did not report on his tax return.  Gross income includes unemployment compensation.  Sec. 85(a).  Section 85(b) defines unemployment compensation as "any amount received under a law of the United States or of a State which is in the nature of unemployment compensation."  The parties do not dispute that the $3,620 Oglesby received is unemployment compensation within the meaning of section 85(b).  We therefore uphold the IRS's determination that Oglesby failed to report $3,620 of income from unemployment compensation.

### III. Additions to Tax and Penalties

The IRS has the burden of producing evidence that taxpayers are liable for additions to tax and penalties.  Sec. 7491(c).  The IRS satisfies its burden by producing "sufficient evidence indicating that it is appropriate to impose the relevant penalty."  Higbee v. Commissioner, 116 T.C. 438, 446 (2001).  Once the IRS satisfies its burden of production, taxpayers have the burden of persuading the fact finder that they are not liable for additions or penalties.  Id. at 446-447.

The IRS determined that Oglesby was liable for additions to tax of $100 under section 6651(a)(1) and a penalty of $1,122.40 under section 6662.

A.    Addition to Tax Under Section 6651(a)(1)

When a taxpayer is late in filing a return, section 6651(a)(1) imposes an addition to tax unless the taxpayer had a reasonable cause for failing to file on time.  For each month the taxpayer is late, the addition is 5 percent of the tax due,[7] up to 25 percent.  Sec. 6651(a)(1).  If a return is more than 60 days late, the minimum addition under section 6651(a)(1) is the lesser of $100 or the tax due.  Sec. 6651(a).

The IRS has met its burden of production for imposing the addition to tax under section 6651(a)(1).  Oglesby filed his 2005 federal income tax return on June 27, 2007, more than a year late.

Oglesby did not prove that he is exempt from the addition to tax.  The section 6651(a)(1) addition to tax does not apply if the taxpayer shows that the failure to timely file was due to reasonable cause and not due to willful neglect.  Sec. 6651(a)(1); sec. 301.6651-1(c), Proced. & Admin. Regs.  But

---

[7]For sec. 6651(a)(1), the tax due is "the amount of tax required to be shown on the return * * * reduced by the amount of any part of the tax which is paid on or before the date prescribed for payment of the tax and by the amount of any credit against the tax which may be claimed on the return".  Sec. 6651(b)(1); see also sec. 301.6651-1(d), Proced. & Admin. Regs.

Oglesby did not adduce evidence that the reasonable cause exception applies. He testified that nothing stopped him from filing his 2005 tax return on time, and he offered no other cause for the delay.

We therefore uphold the IRS's determination that Oglesby was liable for an addition to tax under section 6651(a)(1). Because the exact amount required to be shown on the return will depend on the results of the Rule 155 computation, the addition to tax under section 6651(a)(1) will depend on the results of that computation.

B. Penalty Under Section 6662

Section 6662 imposes a penalty equal to 20 percent of the part of an underpayment attributable to either (i) negligence or disregard of rules or regulations or (ii) a substantial understatement of income tax. Sec. 6662(a) and (b)(1) and (2). The IRS determined that Oglesby was liable for the section 6662 penalty for negligence, or alternatively, substantial understatement of income tax.

1. Negligence

The IRS has produced sufficient evidence that it is appropriate to impose the section 6662 penalty on parts of the underpayment because those parts are attributable to negligence.

Negligence, for section 6662 purposes, is the lack of due care or the failure to do what a reasonably prudent person would

do under like circumstances. <u>Hofstetter v. Commissioner</u>, 98 T.C. 695, 704 (1992); <u>Neely v. Commissioner</u>, 85 T.C. 934, 947 (1985). And negligence includes "any failure to make a reasonable attempt to comply with the provisions of the internal revenue laws". Sec. 1.6662-3(b)(1), Income Tax Regs.; see also sec. 6662(c).

### a. <u>Underpayment Attributable to Repair Expense Deductions</u>

The IRS has demonstrated that Oglesby improperly claimed a deduction of $4,150 for the cost of the repairs to the rental property. But it has presented no evidence that Oglesby's reporting was attributable to negligence as opposed to a reasonable and honest misunderstanding that the costs of the repairs should be deducted rather than capitalized. Thus the portion of the underpayment that resulted from Oglesby's improperly claiming a deduction of $4,150 for repair costs is not attributable to negligence.

### b. <u>Underpayment Attributable to Various Schedule A Deductions</u>

The IRS properly disallowed $9,058.23 of Oglesby's Schedule A deductions. See <u>supra</u> part II.A.2. Negligence includes failing to keep adequate books and records or failing to properly substantiate items. Sec. 1.6662-3(b)(1), Income Tax Regs. The IRS has shown that Oglesby did not keep adequate books and records and did not properly substantiate the $9,058.23 of deductions that we have disallowed. In fact, Oglesby failed to

produce records to substantiate any of the Schedule A deductions disallowed by this Court. Thus the IRS has provided sufficient evidence that it is appropriate to impose the negligence penalty on the part of the underpayment attributable to the $9,058.23 of Schedule A deductions properly disallowed by the IRS.

### c. Underpayment Attributable to Failing To Report Income

The IRS properly determined that Oglesby failed to report income from cancellation of debt and unemployment compensation. In testifying, Oglesby offered no explanation for his failure to report the income. The IRS has provided sufficient evidence that it is appropriate to impose the negligence penalty on the part of the underpayment attributable to the unreported income.

### 2. Substantial Understatement

Section 6662(d) defines "substantial understatement". Generally, an "understatement" is the excess of tax required to be shown on the return over the tax shown on the return. Sec. 6662(d)(2)(A); sec. 1.6662-4(b)(2), Income Tax Regs. An understatement is substantial if it exceeds $5,000 and it exceeds 10 percent of the tax required to be shown on the return. Sec. 6662(d)(1)(A); sec. 1.6662-4(b)(1), Income Tax Regs.

The exact amount of Oglesby's understatement will depend on the results of the Rule 155 computation. To the extent his understatement was substantial, the IRS has provided sufficient evidence that it is appropriate to impose the substantial

understatement penalty. See, e.g., <u>Jarman v. Commissioner</u>, T.C. Memo. 2010-285; <u>Prince v. Commissioner</u>, T.C. Memo. 2003-247.

      3.    <u>Exceptions</u>

There are several exceptions to the section 6662 penalty. A position with a reasonable basis is not due to negligence. Sec. 1.6662-3(b)(1), Income Tax Regs. Also, no penalty is imposed on a part of the underpayment if the taxpayer (i) had a reasonable cause for and (ii) acted in good faith regarding that part of the underpayment. See sec. 6664(c)(1); sec. 1.6664-4(a), Income Tax Regs. Regarding the substantial understatement component of the penalty, if (i) there is substantial authority for the taxpayer's treatment of an item on the return or (ii) there is a reasonable basis for the tax treatment of an item and the relevant facts affecting that item's tax treatment are adequately disclosed in the return or in a statement attached to the return, the tax attributable to the item is not included in the understatement. Sec. 6662(d)(2)(B).

The taxpayer bears the burdens of both production and proof as to whether an exception to the penalty applies. See <u>Higbee v. Commissioner</u>, 116 T.C. at 446 (stating that the IRS "need not introduce evidence regarding reasonable cause, substantial authority, or similar provisions").

Oglesby did not show by a preponderance of the evidence that the parts of the underpayment resulting from his failure to

report income and his failure to substantiate deductions were not attributable to negligence. And Oglesby has not shown that any penalty exception applies to any part of the underpayment. He offered no reason for failing to report income, he did not explain his failure to substantiate deductions, and he offered no reason for deducting rather than capitalizing the repair expenditures.

We therefore uphold the IRS's determination that the following parts of Oglesby's underpayment are attributable to negligence: (i) the part attributable to the $9,058.23 of disallowed Schedule A itemized deductions, (ii) the part attributable to the $3,620 of unreported income from unemployment compensation, and (iii) the part attributable to the $1,659 of unreported income from the cancellation of debt. And to the extent the results of the Rule 155 computation show that his understatement was substantial, we will uphold the IRS's determination that Oglesby's underpayment is attributable to a substantial understatement of income tax.

IV. Summary

We find (i) that Oglesby is entitled to a deduction of $2,869.77 for payment of union dues; (ii) that Oglesby is not entitled to a deduction under section 162 for the $4,150 for which he claimed a repair expense deduction; (iii) that the $4,150 is properly included in Oglesby's basis in the rental

property; (iv) that the IRS properly disallowed $9,058.23 of Schedule A itemized deductions; and (v) that the IRS properly determined that Oglesby had income of $3,620 from unemployment compensation and $1,659 from cancellation of debt.

As to penalties and additions to tax, we uphold the IRS's determination that Oglesby is liable for an addition to tax under section 6651(a)(1). And we uphold the IRS's determination that Oglesby is liable for the section 6662 penalty on the following parts of the underpayment, which are attributable to negligence: (i) the part attributable to the $9,058.23 of disallowed Schedule A itemized deductions, (ii) the part attributable to the $3,620 of unreported income from unemployment compensation, and (iii) the part attributable to the $1,659 of unreported income from the cancellation of debt. Alternatively, to the extent the understatement was substantial, we uphold the IRS's determination that Oglesby is liable for the section 6662 penalty on the entire underpayment.

To reflect the foregoing,

Decision will be entered under Rule 155.