T.C. Memo. 2021-16

UNITED STATES TAX COURT

DON KRAMER AND LELA ARABULI, Petitioners <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent

DON KRAMER, Petitioner <u>v.</u> COMMISSIONER OF
INTERNAL REVENUE, Respondent

Docket Nos. 15224-17, 15368-17.          Filed February 16, 2021.

Don Kramer and Lela Arabuli, pro sese.

<u>Mark J. Tober</u>, <u>Sean P. Deneault</u>, and <u>William T. Maule</u>, for respondent.

MEMORANDUM OPINION

GALE, <u>Judge</u>:  Respondent has moved in these consolidated cases for entry

of default and decision (motion).  The motion was set for a hearing at which

[*2] petitioners failed to appear.[1]  Because petitioners neither cooperated in preparing these cases for trial nor appeared for trial, we will grant respondent's motion and enter decisions in his favor.

I.    Procedural History

The petitions in these cases seek redetermination of adjustments in two notices of deficiency.[2]  One of the notices, in the case at docket No. 15224-17, was addressed to both petitioner Don Kramer and petitioner Lela Arabuli.  In that notice of deficiency, respondent determined the following deficiencies, as well as section 6651[3] failure-to-file additions to tax, a section 6662 accuracy-related penalty, and section 6663 fraud penalties:[4]

---

[1]As a consequence, petitioners forfeited their opportunity to dispute the allegations in respondent's motion.

[2]At the time the petitions were filed in these cases, petitioners resided in Michigan.

[3]Unless otherwise indicated, all section references are to the Internal Revenue Code of 1986, as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[4]Respondent determined the sec. 6663 fraud penalties only against Mr. Kramer.  For the years for which respondent determined fraud penalties against Mr. Kramer, he determined in the alternative that both petitioners are liable for sec. 6662 accuracy-related penalties.  Because we sustain the fraud penalties, we do not further address the accuracy-related penalties for 2006, 2007, and 2008 as only one of the penalties may be imposed with respect to the same underpayment.  See sec. 6662(b) (flush language); Le v. Commissioner, T.C.

(continued...)

[*3]

| | | Addition to tax | Penalties | |
| Year | Deficiency | sec. 6651 | Sec. 6662 | Sec. 6663 |
|------|-----------|-----------|-----------|-----------|
| 2006 | $49,559 | $12,349.00 | --- | $37,169 |
| 2007 | 30,735 | 9,306.75 | --- | 23,051 |
| 2008 | 16,467 | 4,116.75 | --- | 12,350 |
| 2010 | 4,424 | 971.50 | $777.20 | --- |

Respondent determined that Mr. Kramer, but not Ms. Arabuli, is liable for section 6663 fraud penalties. Petitioners timely petitioned for redetermination with respect to this notice of deficiency. In his answer, respondent affirmatively pleaded numerous allegations in support of his fraud penalty determinations against Mr. Kramer for 2006, 2007, and 2008.

In the other notice of deficiency, in the case at docket No. 15368-17, addressed only to Mr. Kramer, respondent determined a section 6651 failure-to-file addition to tax and section 6663 fraud penalties[5] as follows:

---

[4](...continued)
Memo. 2020-27, at *38-*39; Zaban v. Commissioner, T.C. Memo. 1997-479, 1997 WL 651480, at *12.

[5]Respondent again determined sec. 6662 accuracy-related penalties as an alternative to the sec. 6663 fraud penalties. In this case as well, we sustain the fraud penalties for both years and therefore do not address the accuracy-related penalties.

[*4]

| Year | Deficiency | Addition to tax sec. 6651 | Penalties Sec. 6662 | Sec. 6663 |
|------|-----------|----------------------------|---------------------|-----------|
| 2004 | --- | --- | --- | $17,295.00 |
| 2005 | --- | $2,039 | --- | 8,724.75 |

Mr. Kramer timely petitioned for redetermination with respect to the adjustments in this notice of deficiency.[6]  In his answer, respondent affirmatively pleaded numerous allegations in support of his fraud penalty determinations against Mr. Kramer for 2004 and 2005.

First set for trial in November 2018, these cases were continued and consolidated at the parties' joint request.  They were rescheduled for trial as described below.

A notice setting the cases for trial (trial notice), setting the trial date in each of these cases for November 18, 2019, was mailed on June 18, 2019, to petitioners at the address they provided in their petitions.  The trial notice warned: "Your

---

[6]The notice of deficiency for 2004 and 2005 did not determine a deficiency for either year, as Mr. Kramer had consented to the assessment of deficiencies of $23,060 and $11,633, respectively, for those years.  Nonetheless, we have jurisdiction to redetermine the sec. 6651 addition to tax and the sec. 6663 fraud penalties for those years even in the absence of determinations of deficiencies in tax.  See Eck v. Commissioner, 16 T.C. 511, 515 (1951), aff'd per curiam, 202 F.2d 750 (2d Cir. 1953).

**[\*5]** failure to appear may result in dismissal of the case and entry of decision against you." This mailing was not returned.

A standing pretrial order was attached to the trial notice. The standing pretrial order directed petitioners, among other things: (1) to communicate and cooperate with respondent's counsel regarding settlement or, if the case could not be settled, the preparation of a stipulation of facts; (2) to identify in writing and exchange with respondent's counsel, no later than November 4, 2019, any documents or materials that petitioners expected to offer at trial; (3) to serve on respondent's counsel and file with the Court a pretrial memorandum no later than November 4, 2019; and (4) to be present on the trial date and prepared to try the case. The standing pretrial order warned: "The Court may impose appropriate sanctions, including dismissal, for any unexcused failure to comply with this Order."

A second notice (reminder notice), mailed on October 4, 2019, to petitioners at the address they provided in their petitions, reminded them that their cases had been set for trial on November 18, 2019, and warned that failure to appear could result in dismissal of their cases. This mailing was not returned.

Petitioners did not file a pretrial memorandum in either of these cases. Additionally, respondent's counsel sent petitioners several letters seeking their

**[*6]** cooperation in preparing these cases for trial. Respondent's counsel also attempted to contact petitioners by telephone on several occasions. Although these efforts did yield some communications between the parties, they made little progress in preparing these cases for trial. Indeed, there was no successful communication between the parties for roughly an entire year after the Court continued these cases from their initial trial setting.[7]

When respondent's efforts to pursue informal discovery proved unsuccessful, he turned to formal discovery. Respondent's formal discovery efforts began with a request for admissions under Rule 90, which was filed with the Court and served on petitioners on August 30, 2019. While his request for admissions was pending, respondent sent petitioners a proposed stipulation of facts. Although respondent's counsel took steps to ensure that petitioners were aware of the procedures set forth in Rule 90(c) for serving and filing a proper response to the request for admissions, petitioners did not do so.[8] Respondent

---

[7]Respondent's specific allegations concerning petitioners' failure to cooperate are detailed in his motion, which petitioners could have disputed had they appeared at the trial session. Given petitioners' failure to dispute respondent's allegations, and the absence of any evidence to the contrary, we treat them as established for purposes of the motion.

[8]Petitioners did, however, serve on respondent a notice of objection to respondent's request for admissions, wherein they sought to review originals of documents attached to the request for admissions and alleged that respondent and

(continued...)

**[*7]** thereafter incorporated the matters addressed in the request for admissions in a proposed first supplemental stipulation of facts.

On October 1, 2019, respondent's counsel sent a copy of the first supplemental stipulation of facts to petitioners, accompanied by a letter that explained the parties' joint obligation under Rule 91 to reach, to the fullest extent possible, comprehensive stipulations regarding matters relevant to the pending cases. The letter also informed petitioners that respondent planned to seek an order compelling stipulation under Rule 91(f).

On October 4, 2019, respondent filed a motion for an order to show cause why proposed facts and evidence should not be accepted as established pursuant to Rule 91(f), which included as exhibits the proposed stipulation of facts and the proposed first supplemental stipulation of facts. The Court then issued an order to show cause directing petitioners to show cause by October 28, 2019, why the matters set forth in the proposed stipulation of facts and first supplemental stipulation of facts should not be treated as established.

---

[8](...continued)
his counsel had violated their civil rights and the Fair Debt Collection Practices Act. This notice of objection did not comply with Rule 90(c), which requires, as to each matter raised in a request for admissions, a written answer that either specifically admits or denies the matter or states a detailed objection thereto.

**[*8]** In response, Mr. Kramer filed a document on November 1, 2019, entitled "Tax Statement Affidavit". Instead of addressing respondent's proposed stipulations, the Tax Statement Affidavit set forth hundreds of pages of tax-protester rhetoric. Ms. Arabuli did not file any response to the order to show cause. Accordingly, the Court deemed stipulated all matters set forth in the proposed stipulation of facts and the first supplemental stipulation of facts.

## II.     Default Judgment Under Rule 123

Rule 123(a) provides that the Court may hold a party in default and enter a decision against that party if he or she has "failed to plead or otherwise proceed as provided by these Rules or as required by the Court". Rule 123(b) allows the Court broad discretion to dismiss a case "[f]or failure of a petitioner properly to prosecute or to comply with these Rules or any order of the Court or for other cause which the Court deems sufficient". In general, entry of default under Rule 123(a) is appropriate as to issues where the Commissioner bears the burden of proof, while dismissal under Rule 123(b) is appropriate where the taxpayer bears the burden of proof. See Smith v. Commissioner, 926 F.2d 1470, 1476 (6th Cir. 1991), aff'g 91 T.C. 1049 (1988); Putnam v. Commissioner, T.C. Memo. 2015-160, at *12-*13.

**[\*9]** We have interpreted Rule 123 "liberally to permit entry of a judgment of default or dismissal consistently with our sound discretion and the interests of justice." <u>Hill v. Commissioner</u>, T.C. Memo. 2015-172, at \*10 (citing <u>Stringer v. Commissioner</u>, 84 T.C. 693, 706 (1985), <u>aff'd without published opinion</u>, 789 F.2d 917 (4th Cir. 1986)). Accordingly,

> [w]e have entered judgments of default or dismissal where a taxpayer (among other things): (1) unreasonably refused to stipulate facts or the authenticity of documents, <u>Long v. Commissioner</u>, 742 F.2d 1141 (8th Cir. 1984); (2) failed to comply with Court-ordered discovery, <u>Rechtzigel v. Commissioner</u>, 79 T.C. 132 (1982), <u>aff'd per curiam</u>, 703 F.2d 1063 (8th Cir. 1983); or (3) failed to appear at trial, <u>Ritchie v. Commissioner</u>, 72 T.C. 126 (1979).

<u>Id.</u> at \*10-\*11. We have also pointed out that in cases where "a taxpayer does not think well enough of his case to defend it where the government has the burden of proof, this Court should default him." <u>Bosurgi v. Commissioner</u>, 87 T.C. 1403, 1408 (1986).

Petitioners' conduct in these cases establishes that they have failed to proceed both as provided by the Court's Rules and as we have otherwise directed by order. Although the Court's Rules required petitioners to cooperate with respondent's counsel to prepare stipulations of facts, they failed to do so. Additionally, petitioners did not appear for trial, despite being warned by the trial notice, standing pretrial order, and reminder notice that failure to appear could

**[\*10]** result in dismissal of these cases and entry of decisions against them. Finally, petitioners have failed to cooperate with respondent's counsel to prepare for trial or otherwise resolve these cases as directed in the standing pretrial order. Petitioners have not advanced any justification for their failures. Consequently, we conclude that petitioners are in default under Rule 123(a).

Although petitioners are in default, respondent bears certain burdens of production or proof with respect to the deficiencies, additions to tax, and penalties at issue in these cases. Accordingly, we must also determine whether respondent has carried his various burdens in order to decide whether it is appropriate to enter decisions in his favor on all issues determined in the notices of deficiency. See Hill v. Commissioner, at \*11. Where, as here, we have found petitioners in default, all well-pleaded allegations in respondent's answers are deemed admitted. See Bosurgi v. Commissioner, 87 T.C. at 1409; Rechtzigel v. Commissioner, 79 T.C. 132, 141-142 (1982), aff'd per curiam, 703 F.2d 1063 (8th Cir. 1983). Respondent may also rely on deemed admissions and deemed stipulations to satisfy his burdens of production and proof. See, e.g., Smith v. Commissioner, 91 T.C. at 1052-1053; Console v. Commissioner, T.C. Memo. 2001-232, 2001 WL 1020126, at \*4, aff'd, 85 F. App'x 869 (3d Cir. 2003).

**[\*11]** III.   <u>Deficiencies</u>

Generally, the Commissioner's determinations in a notice of deficiency are presumed correct. <u>See</u> Rule 142(a). Here, all of the material allegations set forth in the petitions in support of the assignments of error have been denied in respondent's answers. Petitioners have not claimed or shown entitlement to any shift in the burden of proof under section 7491(a). <u>See</u> sec. 7491(a)(2)(B). Accordingly, the burden of proof generally rests with petitioners concerning any error in the deficiency determinations.

As we have noted, Mr. Kramer agreed to the deficiencies determined for 2004 and 2005. <u>See</u> <u>supra</u> note 6. In addition, the income adjustments underlying respondent's deficiency determinations for the other years at issue are largely established by deemed stipulations. For 2006, 2007, and 2008 Mr. Kramer is deemed to have stipulated that he received significant amounts of unreported income, consisting of taxable interest income, qualified dividend income, and passive foreign investment company income; for 2010, deemed stipulations establish that Mr. Kramer failed to report his receipt of various amounts of taxable interest income and a qualified dividend.

However, the deemed admissions and deemed stipulations in these cases do not directly establish petitioners' receipt of two items of unreported income:  $99

[*12] from taxable refunds of State and local taxes for 2007 and $16,410 from pensions and annuities for 2010.[9]  Where, as here, a taxpayer disputes a deficiency determination that is based on unreported income, the presumption of correctness does not apply unless the Commissioner can establish at least a "minimal" factual predicate or evidentiary foundation connecting the taxpayer to an income-generating activity or to the receipt of funds.  See United States v. Walton, 909 F.2d 915, 918-919 (6th Cir. 1990) (citing Weimerskirch v. Commissioner, 596 F.2d 358, 361-362 (9th Cir. 1979), rev'g 67 T.C. 672 (1977)); Richardson v. Commissioner, T.C. Memo. 2006-69, 2006 WL 931912, at *14, aff'd, 509 F.3d 736 (6th Cir. 2007).  "Once the Commissioner makes the required threshold showing, the burden shifts to the taxpayer to prove by a preponderance of the evidence that the Commissioner's determinations are arbitrary or erroneous."

---

[9]Respondent contends that these two income adjustments (which appear in the notice of deficiency on line "e" of section 7, titled "Adjustments to income", in Forms 5278, Statement - Income Tax Changes) are not in dispute because the petition in docket No. 15224-17 did not properly assign error to them.  It is true that, despite assigning error to other adjustments for 2007 and 2010 by identifying specific lettered items listed in section 7 of the Forms 5278, the petition did not specifically assign error to the line 7(e) adjustments.  But the petition nevertheless alleged that respondent's written explanations with respect to "Taxable Refunds of State and Local Income Taxes" and "Pensions and Annuities" were "baseless and arbitrary".  Those written explanations (which appear in the notice of deficiency in Form 886-A, Explanation of Items) list the specific amounts of the relevant income adjustments.  Under these circumstances, we conclude that the petition adequately assigned error to both adjustments.  See Gray v. Commissioner, 138 T.C. 295, 298 (2012) (noting that a pro se litigant's petition should be liberally construed).

[*13] Walquist v. Commissioner, 152 T.C. 61, 67-68 (2019) (citing Helvering v. Taylor, 293 U.S. 507, 515 (1935)).

Respondent contends in his motion, and petitioners have not disputed, that he has satisfied any burden to produce predicate evidence connecting petitioners to income that he determined was unreported. We agree. In particular, petitioners are deemed to have stipulated the authenticity of copies of their joint Federal income tax returns for 2006, 2007, 2008, and 2010. As explained below, those returns establish a sufficient factual predicate to connect petitioners to both the State and local tax refund income and the pension and annuity income that remain in dispute. Respondent's determinations with respect to those items are therefore entitled to the presumption of correctness, and petitioners bear the burden to prove them arbitrary or erroneous.

With respect to the $99 State and local tax refund for 2007, petitioners' returns for 2006, 2007, and 2010 all claimed deductions on Schedule A, Itemized Deductions, for State and local tax payments. Their 2006 and 2008 returns also reported income from taxable refunds of State and local taxes of $550 and $2,356, respectively. This pattern of claiming deductions for State and local tax payments, combined with petitioners' self-reported receipt of taxable refunds of such payments in their 2006 and 2008 returns, establishes a sufficient factual predicate

[*14] to support the inference that petitioners likely also received a taxable refund that should have been reported in their 2007 return, as determined in the notice of deficiency.

A similar analysis supports respondent's determination regarding pension and annuity income for 2010. In their returns for 2006 and 2007, petitioners reported taxable pension and annuity income of $82,580 and $81,903, respectively. Petitioners also reported an additional tax of $8,258 for 2006 and $8,190 for 2007, equivalent to 10% of the pension and annuity income that they reported for each of those years. See sec. 72(t)(1) (imposing an additional 10% tax on certain distributions from qualified retirement plans). Respondent's determination that petitioners failed to report $16,410 of pension and annuity income for 2010 (which was accompanied by a further adjustment in the notice of deficiency reflecting an additional tax of $1,641, equivalent to 10% of the unreported amount) thus finds factual support in petitioners' self-reported history of receiving similar large pension and annuity distributions, subject to an additional 10% tax, in previous years.

Accordingly, all of respondent's deficiency determinations either have been conclusively established through deemed stipulations or are entitled to the presumption of correctness. Because petitioners adduced no evidence in support of

**[\*15]** the assignments of error, they have failed to satisfy their burden of proof. We therefore sustain respondent's deficiency determinations in full.

IV.    Additions to Tax and Penalties

In the notices of deficiency, respondent also determined additions to tax and penalties (collectively, penalties) against one or both petitioners for each of the taxable years at issue. These included failure-to-file additions to tax under section 6651, an accuracy-related penalty under section 6662, and fraud penalties under section 6663, each requiring respondent to carry a particular burden of production or proof.

The Commissioner generally bears the burden of production with respect to a penalty where the taxpayer has contested it in a petition. See sec. 7491(c); Funk v. Commissioner, 123 T.C. 213, 216-218 (2004); Swain v. Commissioner, 118 T.C. 358, 363-365 (2002). The Commissioner's burden of production includes showing compliance with the supervisory approval requirement of section 6751(b). See Graev v. Commissioner, 149 T.C. 485, 492-493 (2017), supplementing and overruling in part 147 T.C. 460 (2016); see also Chai v. Commissioner, 851 F.3d 190, 221 (2d Cir. 2017), aff'g in part, rev'g in part T.C. Memo. 2015-42. The Commissioner also must offer sufficient evidence to indicate that it is appropriate to impose the penalty. Higbee v. Commissioner, 116 T.C. 438, 446 (2001). If the

**[\*16]** Commissioner satisfies his burden of production, the taxpayer bears the

burden of proving it is inappropriate to impose the penalty because of reasonable

cause, substantial authority, or a similar provision.  Id. at 446-447; see also secs.

6651(a)(1), 6664(c); Wheeler v. Commissioner, 127 T.C. 200, 206 (2006), aff'd,

521 F.3d 1289 (10th Cir. 2008).

      A.    Supervisory Approval

Respondent has met his burden of production with respect to supervisory

approval of the section 6662 accuracy-related penalty and the section 6663 fraud

penalties.[10]  To do so, respondent submitted with his motion excerpts of two "30-

day letter" packages addressed to petitioners.  The excerpts were accompanied by a

declaration of Revenue Agent Jeffrey M. Wiese (RA Wiese), in which RA Wiese

avers that the excerpts are copies of records made and maintained by the Internal

Revenue Service in the ordinary course of business, made at or near the time of

occurrence of the relevant events by a person (or from information transmitted by a

person) with knowledge thereof.  RA Wiese's declaration is sufficient to

---

[10]The failure-to-file additions to tax under sec. 6651 are not subject to the supervisory approval requirement.  See sec. 6751(b)(2)(A); Dynamo Holdings Ltd. P'ship v. Commissioner, 150 T.C. 224, 231 (2018).

[*17] authenticate the excerpts from the 30-day letter packages as admissible business records.[11]  See Fed. R. Evid. 803(6), 902(11).

One of the 30-day letter packages was addressed to Mr. Kramer and contained the results of an examination of his 2004 and 2005 Federal tax returns, while the other was addressed to both Mr. Kramer and Ms. Arabuli and contained the results of an examination of their 2006, 2007, 2008, 2009, and 2010 Federal tax returns.  Each package included a cover letter (Letter 950) and a Form 4549, Income Tax Examination Changes.  The Letters 950 are dated June 18, 2013, and bear the signature of Paul Brusseau (whom petitioners are deemed to have stipulated was RA Wiese's immediate supervisor) above the title "Group Manager, Examination Area (Central)".  The Forms 4549 are also dated June 18, 2013, and they bear RA Wiese's typed signature.  For each taxable year, the Forms 4549 list the proposed adjustments to petitioners' income tax liabilities, including the section 6662 penalty for 2010 and section 6663 penalties for 2004 through 2008.

In addition, petitioners are deemed to have stipulated the authenticity of a more complete copy of the 30-day letter package relating to their 2006 through

---

[11]Assertions in the declaration are inadmissible hearsay except to the extent that they authenticate the excerpts from the 30-day letter packages as business records, and we therefore do not consider those assertions for any other purpose. See, e.g., Shuman v. Commissioner, T.C. Memo. 2018-135, at *24-*28, aff'd, 774 F. App'x 813 (4th Cir. 2019).

[*18] 2010 taxable years,[12] which includes a more detailed explanation of the section 6662 accuracy-related penalty proposed for 2010. That copy of the 30-day letter package includes a calculation worksheet for 2010 titled "Accuracy-Related Penalties under IRC 6662" which states that petitioners' underpayment of tax for that year "is attributable to one or more of" several grounds on which a section 6662 penalty could be imposed, including "negligence or disregard of rules or regulations". It also includes two copies of Form 870, Waiver of Restrictions on Assessment and Collection of Deficiency in Tax and Acceptance of Overassessment, stating the amount of the proposed penalty for 2010 with the notation "IRC 6662(c)" (referring to the provision that defines the terms "negligence" and "disregard" for purposes of section 6662).

Under section 6751(b)(1), the "initial determination" of a penalty must be "personally approved (in writing) by the immediate supervisor of the individual making such determination" or by a designated higher ranking official. See Chai v. Commissioner, 851 F.3d at 220-221; Graev v. Commissioner, 149 T.C. at 487. We recently explained that the initial determination of a penalty "is embodied in

---

[12]The relevant stipulation states that a "Letter 950 along with attachments" with respect to petitioners' 2006, 2007, 2008, and 2009 taxable years was attached to the first supplemental stipulation of facts. However, the referenced letter and attachments also address 2010. We are not bound by a stipulation that clearly misstates the contents of a document it describes. See, e.g., Cal-Maine Foods, Inc. v. Commissioner, 93 T.C. 181, 195-196 (1989).

[*19] the document by which the Examination Division formally notifies the taxpayer, in writing, that it has completed its work and made an unequivocal decision to assert penalties." Belair Woods, LLC v. Commissioner, 154 T.C. 1, 15 (2020). For purposes of this requirement, a revenue agent's report containing proposed penalties that is transmitted to a taxpayer as part of a 30-day letter package constitutes an initial determination that requires supervisory approval. See Clay v. Commissioner, 152 T.C. 223, 249 (2019); Flume v. Commissioner, T.C. Memo. 2020-80, at *34.

The written supervisory approval of an initial penalty determination is not required to take any specific form. See Palmolive Bldg. Inv'rs, LLC v. Commissioner, 152 T.C. 75, 85-86 (2019). For example, a supervisor's signature on a cover letter sent to a taxpayer along with an examination report is sufficient. See PBBM-Rose Hill, Ltd. v. Commissioner, 900 F.3d 193, 213 (5th Cir. 2018); Flume v. Commissioner, at *34. Additionally, section 6662 provides for several distinct penalties, and each specific penalty determined thereunder must be approved by a supervisor. See Palmolive Bldg. Inv'rs, LLC v. Commissioner, 152 T.C. at 87.

Where the Commissioner's determination of a section 6662 accuracy-related penalty is communicated to a taxpayer through "boilerplate text" indicating that the

[*20] penalty is "'attributable to one or more of' specified grounds," the communication is "interpreted to assert all of the specified grounds as alternative bases for the penalty, unless other portions of the communication explicitly limit the penalty determination to a subset of those grounds." See Oropeza v. Commissioner, 155 T.C. ___, ___ (slip op. at 15-16) (Oct. 13, 2020). In such instances, our analysis focuses on which penalties the taxpayer would have understood the communication to assert, since the purpose of the supervisory approval requirement is "to prevent the unapproved threat of a penalty from being used 'as a bargaining chip'" against the taxpayer. See id. at ___ (slip op. at 16-17) (quoting Chai v. Commissioner, 851 F.3d at 219).

Because no specific form of approval is required, the supervisor's signatures on the Letters 950 are sufficient to demonstrate that RA Wiese obtained written supervisory approval to assert each of the penalties identified in the 30-day letter packages before the determination of those penalties was formally communicated to petitioners. With respect to 2010, this approval extends to the assertion of a negligence penalty under section 6662(a), (b)(1), and (c), as the boilerplate in the relevant 30-day letter package, combined with the reference therein to section 6662(c), was sufficient to alert petitioners that respondent intended to pursue a penalty on at least that basis.

[*21] Once the Commissioner produces sufficient evidence to demonstrate timely supervisory approval, the burden shifts to the taxpayer to produce evidence of any earlier formal communication of a penalty. See Frost v. Commissioner, 154 T.C. 23, 35-36 (2020). Petitioners have not produced evidence of any formal communication concerning the penalties at issue before the date RA Wiese's supervisor signed the Letters 950. We therefore conclude that the 30-day letter packages constituted the first formal communication of the proposed penalties to petitioners and that respondent has satisfied his burden of production as to the supervisory approval requirement.

### B. Section 6651 Additions to Tax

The matters that we have deemed stipulated under Rule 91(f) are sufficient to establish that respondent has carried his burden of production as to the section 6651(a)(1) additions to tax determined against Mr. Kramer for 2005 and against both petitioners for 2006, 2007, 2008, and 2010. Section 6651(a)(1) imposes an addition to tax for any failure to file a return by its due date. The addition is equal to 5% of the amount required to be shown as tax on the return for each month or portion thereof that the return is late, up to a maximum of 25%. See id. The addition is imposed on the net amount due, calculated by reducing the amount required to be shown as tax on the return by any part of the tax which is paid on or

[*22] before its due date.  See sec. 6651(b)(1).  To carry his burden of production with respect to the section 6651(a)(1) addition to tax, respondent must introduce evidence (such as a stipulation) showing that a return was filed after the due date. See Wheeler v. Commissioner, 127 T.C. at 207-208 (introduction of evidence showing return was filed after due date satisfied burden of production); Higbee v. Commissioner, 116 T.C. at 447 (stipulation as to return filing date satisfied burden of production).

Mr. Kramer is deemed to have stipulated that he filed his 2005 income tax return on or about June 21, 2007.  Mr. Kramer's 2005 return would have been due in April 2006, and any extension for filing that return would have expired in October 2006.  See secs. 6072(a), 6081(a).  Accordingly, the deemed stipulation establishes that Mr. Kramer's return was filed after the due date, and respondent's burden of production is satisfied.  Respondent's burden is similarly satisfied by deemed stipulations that Mr. Kramer and Ms. Arabuli filed joint income tax returns on or about the following dates:  November 24, 2009, for the 2006 taxable year; March 5, 2010, for the 2007 taxable year; June 23, 2010, for the 2008 taxable year; and March 1, 2012, for the 2010 taxable year.  All of these filing dates are later than the due dates of the returns for those years, plus any extensions, and the

[*23] stipulations thus satisfy respondent's burden of production as to section 6651(a)(1) additions to tax for those years.

    C.    Section 6662 Penalty

Respondent has also satisfied his burden of production with respect to the section 6662 penalty he determined against both petitioners for 2010.  Section 6662 imposes a penalty equal to 20% of any underpayment of tax attributable to, inter alia, negligence or disregard of rules or regulations.  See sec. 6662(a) and (b)(1).  Negligence "includes any failure to make a reasonable attempt to comply with the provisions of the internal revenue laws or to exercise ordinary and reasonable care in the preparation of a tax return."  Sec. 1.6662-3(b)(1), Income Tax Regs.; see also sec. 6662(c).

We have previously found that the Commissioner "provided sufficient evidence that it is appropriate to impose the negligence penalty" with respect to the portion of an underpayment attributable to unreported income consisting of $3,620 from unemployment compensation and $1,659 from cancellation of debt where the taxpayer "offered no explanation for his failure to report the income."  Oglesby v. Commissioner, T.C. Memo. 2011-93, 2011 WL 1598728, at *7-*8.  We have also found that negligence penalties were appropriate where the taxpayers did not adequately challenge the Commissioner's determination that they failed to report

[*24] receipt of two State tax refunds in the amounts of $675 and $63. Le v. Commissioner, T.C. Memo. 2020-27, at *25, *39-*40.

Here, we have found that, for 2010, deemed stipulations establish that petitioners received and failed to report income from taxable interest and a qualified dividend and that respondent produced sufficient evidence to indicate that petitioners received and failed to report distributions from pensions and annuities subject to the additional 10% tax under section 72(t)(1). See supra pp. 11, 14. In the notice of deficiency, respondent determined that the total amount of income petitioners failed to report was $18,548 (consisting of $2,137 from taxable interest, $1 from a qualified dividend, and $16,410 from pensions and annuities). Thus, petitioners' 2010 return, which reported total income of $72,338, actually should have reported total income of $90,886. Accordingly, the $18,548 that petitioners failed to report represents approximately 20% of their total income for 2010.

Petitioners' failure to report such significant amounts of income from interest and from pensions and annuities--amounts similar to or greater than amounts of unreported income that we have previously found sufficient to support negligence penalties--in conjunction with their failure to provide any explanation for omitting that income from their return, suggests that they neither made a reasonable attempt to comply with the internal revenue laws nor exercised

[*25] reasonable care in the preparation of their return.[13] In particular, we do not think that a reasonable taxpayer would be unaware of, or fail to report, such a large percentage of his or her total income for a taxable year. This conclusion is particularly compelling here, where income from pensions and annuities constitutes the bulk of the unreported income and petitioners reported significant amounts of income from pensions and annuities for years not long preceding the year at issue. See supra p. 14. Furthermore, the matters we have deemed stipulated establish that Mr. Kramer reported some, but not all, of his taxable interest and qualified dividend income for 2010. From these stipulations we can infer that petitioners did not take reasonable care to ensure that the correct amounts were reported on their return. We accordingly find that respondent has satisfied his burden of production with respect to the appropriateness of the negligence penalty for 2010.

---

[13]We note that petitioners' 2010 return is signed by a return preparer. Although reliance on a return preparer can in some circumstances relieve a taxpayer of liability for a negligence penalty, "[g]enerally, the duty of filing accurate returns cannot be avoided by placing the responsibility on a return preparer." See Rosser v. Commissioner, T.C. Memo. 2010-6, 2010 WL 26295, at *11-*12. Even if a taxpayer establishes that the return preparer is responsible for an error--which petitioners have not done--"the taxpayer still has a duty to read and review the return and make sure that all income items are included." See id. at *12.

[*26] We have sustained a deficiency in tax for 2010 of $4,424. Generally, the deficiency, understatement of income tax, and underpayment of tax are all computed in the same manner. See secs. 6211(a), 6662(d)(2), 6664(a). In this case, however, a withholding adjustment reduces the underpayment to $3,886. Accordingly, petitioners are liable for a penalty of 20% of the $3,886 underpayment, or $777.20.

D.    Section 6663 Penalties

Respondent bears the burden of proof with respect to the section 6663 fraud penalties determined against Mr. Kramer and must prove by clear and convincing evidence that for each year (1) an underpayment of tax exists and (2) at least some portion of the underpayment is due to fraud. See sec. 7454(a); Rule 142(b); DiLeo v. Commissioner, 96 T.C. 858, 873 (1991), aff'd, 959 F.2d 16 (2d Cir. 1992). "Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal." Ohio v. Akron Ctr. for Reprod. Health, 497 U.S. 502, 516 (1990) (quoting Cross v. Ledford, 120 N.E.2d 118, 123 (Ohio 1954)).

**[\*27]** Here, respondent has clearly and convincingly established the existence of underpayments of tax for 2004, 2005, 2006, 2007, and 2008 through the affirmative allegations in the answers, which are deemed admitted, as well as through matters we have deemed stipulated pursuant to Rule 91(f). Mr. Kramer is deemed to have stipulated that he executed a Form 870 in which he agreed that there were deficiencies in his income tax of $23,060 for 2004 and $11,633 for 2005. This stipulation establishes by clear and convincing evidence that Mr. Kramer underpaid his tax for those years. Mr. Kramer is also deemed to have stipulated that he failed to report substantial amounts of income for the taxable years 2006, 2007, and 2008, and he is deemed to have admitted respondent's allegation that he had "underpayments of tax for the taxable years 2006, 2007, and 2008". Respondent has therefore established clearly and convincingly that Mr. Kramer underpaid his tax for 2006, 2007, and 2008.

Respondent must also prove clearly and convincingly that Mr. Kramer had the requisite fraudulent intent to underpay his tax. Respondent satisfies this burden by showing that Mr. Kramer "intended to evade taxes known to be owing by conduct intended to conceal, mislead or otherwise prevent the collection of taxes." See DiLeo v. Commissioner, 96 T.C. at 874; see also Rowlee v. Commissioner, 80 T.C. 1111, 1123 (1983). Fraud "does not include negligence, carelessness,

[*28] misunderstanding or unintentional understatement of income." United States v. Pechenik, 236 F.2d 844, 846 (3d Cir. 1956).

The existence of fraud is a question of fact to be resolved upon consideration of the entire record. See DiLeo v. Commissioner, 96 T.C. at 874; Gajewski v. Commissioner, 67 T.C. 181, 199 (1976), aff'd without published opinion, 578 F.2d 1383 (8th Cir. 1978). Fraud can rarely be established by direct proof of the taxpayer's intention. Accordingly, fraud may be, and typically is, proved by circumstantial evidence. Courts usually rely on certain indicia (or badges) of fraud in deciding whether a taxpayer had the requisite fraudulent intent. The badges of fraud include: (1) understated income; (2) maintaining inadequate records; (3) failing to file tax returns; (4) implausible or inconsistent explanations of behavior; (5) concealing income or assets; (6) failing to cooperate with tax authorities; (7) engaging in illegal activities; (8) dealing in cash; (9) failing to make estimated tax payments; and (10) filing false documents. See Estate of Trompeter v. Commissioner, 279 F.3d 767, 773 (9th Cir. 2002), vacating and remanding 111 T.C. 57 (1998); Bradford v. Commissioner, 796 F.2d 303, 307-308 (9th Cir. 1986), aff'g T.C. Memo. 1984-601; Recklitis v. Commissioner, 91 T.C. 874, 910 (1988); see also Spies v. United States, 317 U.S. 492, 499-500 (1943). These badges of

[*29] fraud are nonexclusive.  See Niedringhaus v. Commissioner, 99 T.C. 202, 211 (1992).

Mr. Kramer is deemed to have admitted the allegation in the answer in docket No. 15368-17 that at least parts of his "underpayments of tax for the taxable years 2004 and 2005 are due to fraud with the intent to evade tax" and the allegation in the answer in docket No. 15224-17 that at least parts of his "underpayments of tax for the taxable years 2006, 2007, and 2008 are due to fraud with the intent to evade tax."  Moreover, the matters deemed stipulated pursuant to Rule 91(f) in these cases clearly and convincingly establish several badges of fraud.  As one example, the first supplemental stipulation of facts sets forth matters detailing how Mr. Kramer concealed income and assets by falsely stating on his 2004, 2005, 2006, 2007, and 2008 returns that he did not have an interest in or signatory authority over a financial account in a foreign country, even though he had an interest in accounts held with a foreign financial institution beginning in 2003 and continuing beyond 2008.  The first supplemental stipulation of facts also establishes that Mr. Kramer failed to inform his tax return preparer about his foreign accounts, failed to maintain records relating to some of those accounts, failed to file (or was delinquent in filing) so-called FBAR reports relating to his foreign accounts, failed to file several tax returns on time, and failed to report

[*30] income from various sources.  These deemed stipulations, and other matters established in the record, persuade us that respondent has established the existence of Mr. Kramer's fraud for 2004 through 2008 by clear and convincing evidence.

### E. Exculpatory Factors

Petitioners bear the burden of proof with respect to any exculpatory factors for penalties.  See Wheeler v. Commissioner, 127 T.C. at 206; Higbee v. Commissioner, 116 T.C. at 446-447.  As petitioners have adduced no evidence in support of any exculpatory factors, we sustain respondent's penalty determinations.

## V. Statute of Limitations

Petitioners have pleaded as an affirmative defense that the periods of limitations on assessments have expired for the years at issue.  However, the Commissioner may make an assessment at any time "[i]n the case of a false or fraudulent return with the intent to evade tax".  Sec. 6501(c)(1).  Our finding fraud with respect to the 2004 through 2008 taxable years therefore lifts the periods of limitations for those years.  See id.; Richardson v. Commissioner, 509 F.3d at 745.  For 2010 petitioners are deemed to have admitted that the notice of deficiency was issued before the expiration of the limitations period (which was extended by agreement), as alleged in respondent's answer.  Accordingly, respondent is not

**[*31]** barred from assessing any of the deficiencies, additions to tax, or penalties at issue in these cases.

VI.    Conclusion

The record before us establishes that petitioners are in default under Rule 123(a).  The record further establishes that, to the extent he bears them, respondent has carried his burdens of production and proof as to all deficiencies, additions to tax, and penalties determined in the notices of deficiency.  We will therefore grant respondent's motion.

To reflect the foregoing,

Appropriate orders will be issued, and decisions will be entered for respondent.
